```
                UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT CHARLESTON
```

**MICHAEL ADAMS,**

    Plaintiff,

v.                              Civil Action No. 2:17-cv-03127

**GREENBRIER MINERALS, LLC; JOHN DOE
INDIVIDUALS (1-10); and JOHN DOE
CORPORATIONS (1-10),**

    Defendants.

## ORDER

Pending are the parties' cross motions for summary judgment, each filed on September 14, 2018.

### I. Background

Plaintiff Michael Adams is a former employee of Cliffs Logan County Coal, LLC ("Cliffs"). He began working for Cliffs in January 2011 at their Chilton mine as an underground laborer until he was transferred to a communications position there a few months later. (Defendant's Mot. Summ. J., "ECF # 64," Ex. 1 at 12). The communications position was in an office setting, requiring Adams to "monitor carbon dioxide levels; monitor miners underground, their location; report any alarms that go off. [H]e also calibrated the gas detectors [and] had to test the self-rescuers." Id. at 14. In 2014, the Chilton mine

closed and Cliffs moved its Chilton employees to the Lower War Eagle Mine. Id. at 13. There, Adams worked first as an outside utility worker, then briefly in communications until a fellow-employee, Ms. Abbott, was placed in the communications position in order to accommodate difficulty she was having with her eyesight, at which point Adams returned to his outside utility position. Id. at 14-17. Adams remained there until November 2014, when he was placed on short-term disability after he "had a slight heart attack and [had to have stents put in.]" Id. at 20. On December 30, 2014, he was released by his physician to return to "an office job[,]" with the limitation of "avoid[ing] moderate to severe exertion[.]" (ECF # 64 Ex. 10).

During Adams' leave, Cliffs was in discussions with Greenbrier Minerals, LLC ("Greenbrier") over the acquisition of Cliffs' mining assets in Logan County. (ECF # 64 Ex. 3 at 9-10). As part of the acquisition, Greenbrier agreed to hire "at least 80 percent of the employees that were employed by Cliffs[.]" Id. at 11. While the discussions were ongoing, Greenbrier contemplated which employees/positions it would retain, and which would be terminated. Id. at 12. It held meetings for Cliffs' employees where they could complete a new application, learn about the application process, and "meet and greet" Greenbrier. (Plaintiff's Mot. Summ. J. "ECF # 66," Ex. 1

at 30). The acquisition was finalized on December 31, 2014. (ECF # 64 Ex. 4).

Greenbrier ultimately replaced many of the management-level employees, terminated excessive positions, and provisionally terminated all forty-seven inactive employees who "were off work due to illness or injury and were receiving some sort of wage replacement from Cliffs[.]" (ECF # 64 Ex. 3 at 23-24, ECF # 66 Ex. 4 at 3). It chose not to retain the inactive employees because as an "asset purchase agreement, [instead of a stock purchase agreement], Greenbrier did not have a responsibility to assume the liabilities of Cliffs[.]" Id. at 11. Greenbrier decided not to assume the "liability [from the inactive employees] because [Greenbrier] had no way to determine whether or not [those] people would ever return to work." Id. at 24.

Each of the inactive employees received two letters: a notice of eligibility for severance benefits from Cliffs that included a severance agreement containing a liability release; and a letter from Greenbrier indicating that upon an inactive employee's receipt of a physician's release to return to work, the employee should contact Greenbrier within 24 hours to determine if a position is open, as it was Greenbrier's intent "to offer employment first to as many of Cliff's former

employees as possible[.]"  (See ECF # 64 Ex. 6 at 1, ECF # 64 Ex. 7 at 1, and ECF # 64 Ex. 3 at 24).  The letter from Greenbrier indicated that the inactive employees would "be required to go through the same hiring process as all other Cliffs' former employees, including the completion of an employment application."  (ECF # 64 Ex. 7).  At least three of the forty-seven inactive employees came to Greenbrier in or around January 2015 with physician's releases and were offered positions.  (ECF # 64 Ex. 3 at 42, ECF # 64 Ex. 9 at 15-16, and 21-22).

Mr. Adams received each of the letters sent to the inactive employees.  (ECF # 64 Ex. 6 and ECF # 64 Ex. 7).  On December 23, 2014, Cliffs sent Mr. Adams the notice of eligibility for severance benefits, accompanied by a severance agreement which, inter alia, released from liability Cliffs and their "predecessors, successors, and assigns[.]"  (ECF # 64 Ex. 6, as supplemented by ECF # 93, "Joint Stipulation"). Greenbrier is mentioned in neither the notice of eligibility for severance benefits nor the accompanying severance agreement. Id.  Also around that time, Greenbrier sent Adams the letter provisionally terminating all inactive employees.  (ECF # 64 Ex. 7).  However, Mr. Adams also received a letter from Greenbrier

at the end of December that offered him a communications position. (ECF # 64 Ex. 8).

On or around December 31, 2014, Adams went to Greenbrier with his physician's release and the offer letter to ask for the position in communications.[1] Upon his arrival, he was informed that the offer letter was sent by mistake and that all the communications positions were filled, but that he was nonetheless welcome to apply to Greenbrier. (ECF # 64 Ex. 1 at 63-64, ECF # 64 Ex. 9 at 20). The communications positions were in fact filled by those already holding them prior to the acquisition. (ECF # 64 Ex. 3 at 36).

Adams signed the Cliffs severance agreement and release on January 2, 2015. (ECF # 64 Ex. 6, as supplemented by ECF # 93 Ex. 1 at 21). That same month he started a new job as a car salesman. (ECF # 64 Ex. 13 at 3). By the middle of 2015, Adams had fully recovered from his surgery. (ECF # 64 Ex. 1 at 107).

Plaintiff filed this action in the Circuit Court of Logan County on December 23, 2016, alleging an assortment of

---

[1] This date is disputed. (See Defendant's Memo. in Supp. Of Summ. J., ECF # 65 at 6-7, and Plaintiff's Response, ECF # 71 at 2-3). However, for purposes of their motion, the defendant assumes that the plaintiff's assertion is correct; the court does the same.

state and federal statutory and common law violations against Greenbrier, Cliffs, Greenbrier's Vice President of Human Resources Gary Groves, as well as "John Doe" individuals and corporations who are either employees of Greenbrier or Cliffs, or were corporations allegedly associated with or "alter egos" of Greenbrier or Cliffs. (Compl., ECF # 1 Ex. 2). Cliffs removed the action to federal court on June 1, 2017, pursuant to the court's federal question and supplemental jurisdiction. (Not. of. Removal, ECF # 1). On January 29, 2018, the plaintiff filed an abbreviated amended complaint alleging only two counts against Greenbrier and the John Does: one for "Discrimination" and one for "Failure to Accommodate Plaintiff's Request[,]" both under the West Virginia Human Rights Act, § 5-11-9 ("WVHRA"). (Am. Compl., ECF # 27 Ex. 1). The claims against Cliffs and Groves were voluntarily dismissed by the defendant, as reflected in orders entered January 8, 2018 and March 14, 2018. (See Memo. Op. and Order, ECF # 25, and Order, ECF # 37).

## II. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's review is guided by the principle that it must "construe the evidence, and all

6

reasonable inferences that may be drawn from such evidence, in the light most favorable to the nonmoving party." Dash v. Mayweather, 731 F.3d 303, 310 (4th Cir. 2013) (citing PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 119 (4th Cir. 2011)).

III. Discussion

In his motion for partial summary judgment, the plaintiff asserts that he is entitled to summary judgment on Count I of his amended complaint, WVHRA discrimination, for three reasons: first, Greenbrier made pre-employment disability-related inquiries; second, Greenbrier discriminated against him "through disparate treatment of the Plaintiff due to his disability;" or, third, alternatively, Greenbrier "regard[ed] the Plaintiff as disabled at the time the decision was made [not to offer him employment.]" (ECF # 67 at 1) (emphasis omitted).

In its motion for summary judgment, Greenbrier asserts that it is entitled to summary judgment for three reasons: first, it was released from liability through the Cliffs severance agreement; second, Adams cannot prove that he is disabled or regarded as disabled under the WVHRA; and third, the WVHRA did not require it to provide Adams with the filled communications job. (ECF # 65 at 1).

Although there is no evidence that Greenbrier ever hired or discharged Adams, or otherwise owed him any duty, the court nonetheless considers the alternate arguments presented by the parties. The court first considers the merits of the plaintiff's WVHRA discrimination claim. To prevail under the WVHRA, a plaintiff must initially establish a prima facie case of unlawful discrimination. See <u>Bartos v. PDC Energy, Inc.</u>, 275 F. Supp. 3d 755, 760 (N.D.W. Va. 2017) (stating that the WVHRA is governed by the same burden-shifting framework as Title VII of the Civil Rights Act of 1964). The plaintiff must show: "(1) he meets the definition of 'disabled' within the law's meaning; (2) he is a 'qualified disabled person'; and (3) he was discharged from his job." <u>Lindenmuth v. Lab. Corp. of Am.</u>, No. 2:15-CV-13368, 2016 WL 5109159, at *3 (S.D.W. Va. Sept. 19, 2016) (citing <u>Hosaflook v. Consolidation Coal Co.</u>, 201 W. Va. 325, 330 (1997)).

Although the Supreme Court of Appeals of West Virginia has noted that the WVHRA "represents an independent approach to the law of disability discrimination that is not mechanically tied to federal disability discrimination jurisprudence[,]" <u>Stone v. St. Joseph's Hosp. of Parkersburg</u>, 538 S.E.2d 389, 404 (W. Va. 2000), the WVHRA is often analyzed under its federal equivalent, the Americans with Disabilities Act ("ADA"). <u>See</u>

e.g., Lindenmuth v. Lab. Corp. of Am., No. 2:15-CV-13368, 2016 WL 5109159, at *2 (S.D.W. Va. Sept. 19, 2016); Hosaflook v. Consolidation Coal Co., 497 S.E.2d 174, 181 n.10 (W. Va. 1997) (noting that "cases decided under the ADA are also helpful in deciding our cases under the [WVHRA]"); and Kitchen v. Summers Continuous Care Ctr., LLC, 552 F. Supp. 2d 589, 593 n.5 (S.D.W. Va. 2008) ("the 'standards governing the ADA ... and the WV[H]RA are coextensive[,]'") (quoting Shafer v. Preston Mem. Hosp. Corp., 107 F.3d 274, 281 (4th Cir.1997), abrogated on other grounds by Baird ex rel. Baird v. Rose, 192 F. 3d 462 (4th Cir. 1999)).

After establishing a prima facie case, the burden then shifts to the employer to provide a legitimate nondiscriminatory reason for the adverse employment action. Conaway v. E. Associated Coal Corp., 178 W. Va. 164, 171 (1986). "The reason need not be a particularly good one. It need not be one which the judge or jury would have acted upon. The reason can be any other reason except that the plaintiff was a member of a protected class." Id.

Once the employer has provided such a reason, "the employee will have the chance to rebut the employer's evidence with a showing that the stated reason was merely a pretext for discriminatory motive." Id. "'Pretext' means an ostensible

reason or motive assigned as a color or cover for the real reason or motive; false appearance; pretense." <u>Mayflower Vehicle Sys., Inc. v. Cheeks</u>, 218 W. Va. 703, 714 (2006) (quoting <u>W.Va. Institute of Technology v. W.Va. Human Rights Comm'n</u>, 181 W.Va. 525, 531, 383 S.E.2d 490, 496 (1989)). "A proffered reason is a pretext if it was not 'the true reason for the decision[.]'" <u>Id.</u> (quoting Conaway, 178 W.Va. at 171). If pretext is shown, through direct or circumstantial evidence of falsity or discrimination, "discrimination may be inferred." Id. (quoting <u>Barefoot v. Sundale Nursing Home</u>, 193 W.Va. 475, 457 (1995)).

Assuming, arguendo, that the plaintiff can establish a prima facie case[2], his claim nevertheless fails because the defendant has shown a legitimate nondiscriminatory reason for not hiring Mr. Adams, which he fails to adequately rebut, either in his own motion or in response to the defendant's motion. One is not qualified for a position if they have not been released to work in that position by their physician. See <u>Kitchen v. Summers Continuous Care Ctr., LLC</u>, 552 F. Supp. 2d 589, 594 (S.D.W. Va. 2008) (finding that, under both the ADA and the

---

[2] Because the plaintiff's claim necessarily fails, the court chooses not to decide the issues presented relating to the prima facie case, including, inter alia, whether the plaintiff's temporary condition constitutes a disability under the WVHRA.

WVHRA, "an individual who has not been released to work by his or her doctor is not a 'qualified individual with a disability.'"). When a position is filled by another, an employer does not have a duty to remove that person from their position to accommodate a person with a disability. Garvin v. World Color Printing (USA) II Corp., No. 3:10-CV-74, 2011 WL 1485998, at *10 (N.D.W. Va. Apr. 19, 2011) ("'an employer [does not] have a duty to displace other employees in order to accommodate a disabled employee.'") (quoting Skaggs v. Elk Run Coal Co., 198 W. Va. 51, 67 (1996)) (alteration in original). Here, Adams was qualified only for the communications position because it was the only job matching his skillset that did not require moderate to severe exertion. Greenbrier could not offer Adams such a position because all communications positions were filled by those holding them before the acquisition took place. Greenbrier had no duty under the WVHRA to replace those people with Adams. The fact that there were no open positions for which Adams was qualified is thus a legitimate nondiscriminatory reason for rejecting his application.

Adams has not shown that this reason is pretext for disability discrimination. He does not refute that all of the positions for which he was qualified were filled, but contends that refusing to hire anyone on the "inactive" list proves

pretext. Greenbrier agrees that it provisionally terminated each employee on the inactive list. Those employees were simply unable to work at the time of the acquisition, which is why they were on the inactive list in the first place. Indeed, each employee was invited to apply to Greenbrier as soon as they were able to work. This much was indicated in the letters sent to the inactive employees, which specifically stated that Greenbrier wished to hire as many former employees as possible. In fact, at least three inactive employees came to Greenbrier with physician's releases and were offered positions. The plaintiff presents no evidence that Greenbrier held any animus or acted discriminatorily towards anyone on the basis of disability. Accordingly, the plaintiff has failed to show that Greenbrier's reason for not hiring Adams was pretext for disability discrimination, and the defendant prevails on the discrimination claim.

For similar reasons, summary judgment in favor of the defendant is warranted for plaintiff's Count II claim for failure to accommodate. To succeed on a claim for failure to accommodate, the plaintiff must establish:

> (1) The plaintiff is a qualified person with a disability; (2) the employer was aware of the plaintiff's disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation

> existed that met the plaintiff's needs; (5) the
> employer knew or should have known of the plaintiff's
> need and of the accommodation; and (6) the employer
> failed to provide the accommodation.

<u>Alley v. Charleston Area Med. Ctr., Inc.</u>, 216 W. Va. 63, 71 (2004). Plaintiff's sole theory for this claim is that the communications position itself was an accommodation for his inability to use moderate to severe exertion. (Am. Compl., ECF # 27, ¶¶ 25-34). Reassigning an employee to a vacant position may qualify as a reasonable accommodation. <u>Skaggs</u>, 198 W. Va. at 66 ("Our regulations state that '[r]easonable accommodations include, but are not limited to' . . . reassigning the employee 'to a <u>vacant</u> position for which the person is able and competent ... to perform'") (quoting 77 W. Va. C.S.R. 1, § 4.5) (emphasis added). However, the accommodation is only reasonable insofar as there is a vacant position; as already mentioned, an employer does not "have a duty to displace other employees in order to accommodate a disabled employee." <u>Id.</u> at 67. Here, there were no vacant positions; all the communications positions were filled. Notably, Adams was not working in a communications position prior to his surgery; Cliffs had moved him to an outside utility position in order to accommodate another employee's difficulty with her eyesight. Asking Greenbrier to remove an employee from the position they held prior to the

acquisition in order to place Adams there instead is not a reasonable request.

Turning briefly to Mr. Adams' remaining argument, that Greenbrier violated § 77-11-5.1 of the West Virginia Code of State Regulations by making a pre-employment disability-related inquiry, the court finds that raising the argument at this stage of the proceedings is inappropriate. Plaintiff's amended complaint only asserts claims for "Discrimination" and "Failure to Accommodate[,]" both of which are discussed above. Allowing the plaintiff to assert a new legal theory at the summary judgment stage would essentially constitute an amendment of the pleadings, which would unfairly prejudice the defendant. See Harris v. Reston Hosp. Ctr., LLC, 523 F. App'x 938, 946 (4th Cir. 2013) (affirming the lower court's decision "that asserting a new legal theory for the first time in opposing summary judgment amounted to constructive amendment of the amended complaint and thus unfairly prejudiced the defendant[.]"). Furthermore, the argument is meritless. § 77-1-5.1 provides that an employer shall not make a pre-employment inquiry into whether an applicant has a physical or mental impairment, "except that an employer . . . may make pre-employment inquiries into the ability of a job applicant to perform job-related functions." The individuals placed on the inactive list were

there solely because they were temporarily unable to perform their job-related functions. Thus, inquiry as to their identities is permitted by the regulation.

As for the defendant's argument that the severance agreement between Adams and Cliffs released Greenbrier, as a successor of Cliffs, from liability, the court does not address the question because the plaintiff's underlying claims fail.

IV. Conclusion

For the foregoing reasons, it is ORDERED that the defendant's motion for summary judgment be, and it hereby is, granted. It is further ORDERED that the plaintiff's motion for partial summary judgment be, and it hereby is, denied.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: November 13, 2018

_____
John T. Copenhaver, Jr.
Senior United States District Judge